JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-6809
    Facsimile: (415) 436-7234
    E-Mail: wendy.thomas@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0421 MAG |
| Plaintiff, ) | |
| v. ) | UNITED STATES' SENTENCING MEMORANDUM |
| LECK CHOUNLABOUT, and ) CHUNN PHONGSAVATH, and ) SARNON SAEPHAN, ) | Hearing:    February 11, 2008 Time:    1:00 p.m. Courtroom:  Hon. Nandor J. Vadas |
| Defendants. ) | |

### I.  INTRODUCTION

On January 14, 2008, defendants Leck Chounlabout, Chunn Phongsavath, and Sarnon Saephan pled guilty to one count of Entering or Using a Closed Site, in violation of 43 C.F.R. § 8365.2-3(f).  This Court has set February 11, 2008, at 1:00 p.m., as the date for judgment and sentencing.  The government submits the following sentencing memorandum in order to advise the Court of the government's sentencing guideline calculations, and its sentencing recommendation.

### II.  BACKGROUND

A.    <u>Defendants' Offense Conduct</u>

In July of 2005, Bureau of Land Management ("BLM") Ranger Laurel Pistel ("Ranger Pistel") learned that there were active marijuana gardens on BLM lands in the Red Mountain

area of Mendocino County.  On July 13, 2005, at approximately 17:30 hours, while on patrol in the Red Mountain area, BLM Rangers Kynan Barrios ("Ranger Barrios") and Ranger Pistel observed a white Toyota Tundra ("the Toyota") pickup truck (CA # 4YFV564) traveling eastbound at a high rate of speed along Red Mountain Road. They followed the Toyota and observed it turn into a turnout along the road.  Rangers Pistel and Barrios observed supplies in the bed of the pickup that were indicative of marijuana cultivation (including a fifty-five [55] gallon plastic drum, high pressure water hose, and plant food containers).

    The officers approached the Toyota and Ranger Barrios informed the driver, Sarnon Saephan ("Saephan"), that he had been operating the Toyota at a high rate of speed.  Ranger Barrios asked what they were doing and the front seat passenger, Leck Chounlabout ("Chounlabout"), stated they were looking for beargrass[1].  Ranger Barrios asked if they had a permit and Chounlabout said "no permit, just checking for beargrass on public land."  Ranger Barrios asked if he could check the vehicle to see if they had collected beargrass without a permit and Saephan said, "go ahead."

    Ranger Barrios opened the rear driver side door and saw a blue backpack sitting on the back seat next to the rear passenger.  Ranger Barrios asked if there was a weapon in the backpack and Saephan said yes, that there was a handgun in the pack and that it was his.  Barrios opened the backpack and found an Interarms 38 Special, (Serial # W291999), containing ten rounds.  Ranger Pistel observed in the back of the pickup truck a Gilmour water timer, a plastic container holding a large quantity of marijuana seeds, "Fox Farm liquid plant food" containers, a box of "d-con bait bits, kills mice and rats", a garden hose, a high pressure water hose, a five gallon bucket, a 2½ gallon gas container, and a fifty-five (55) gallon plastic drum.

    Rangers Barrios and Pistel asked the individuals for identification. Saephan provided a driver's license and said he owned the Toyota.  Chounlabout said they were in the area looking for beargrass. The rear passenger was Chunn Phongsavath ("Phongsavath"). They stated they

---

[1]3.  Beargrass (*Xerophyllum tenax*) is a grasslike perennial in the family Melanthiaceae, closely related to lilies.  Beargrass is an important part of the fire ecology of regions where it is native.  It has rhizomes which survive fire that clears dead and dying plant matter from the surface of the ground. It thrives with periodic burns and is often the first plant to sprout in a scorched area.  Bear grass may not be removed from BLM Lands without a permit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

were from the Eureka area.  For safety reasons, Ranger Pistel asked the men to step out of the vehicle while Rangers Pistel and Barrios finished checking the vehicle.  Ranger Barrios spoke to Saephan with Saephan sitting in the back seat of Ranger Barrios's vehicle while Ranger Pistel spoke to Chounlabout and Phongsavath by the side of the road.

Chounlabout and Phongsavath told Ranger Pistel they were there checking for beargrass and Chounlabout said BLM would have a copy of a beargrass permit for him from 2004.  Ranger Barrios called Ranger Pistel over and asked Saephan to repeat to her what he had just told Ranger Barrios.  Saephan said, in sum and substance: "It was all Leck's idea. Leck talked to him about growing marijuana at Red Mountain because he and Leck had 215 cards. The marijuana he was growing was for personal use. He had come to Red Mountain three or four times before with Leck and Chunn and they tried to set up a water system but had to hand water the plants. I can show the officers where the garden is."

Ranger Pistel and Saephan proceeded to get in Ranger Barrios's vehicle and drive east along Red Mountain Road. They followed the road a short distance and Saephan told her to pull onto a trail leading downhill.  He said the marijuana was about a five minute drive down the trail. Ranger Pistel drove down the trial and found the marijuana plants.  They then returned to Ranger Barrios.

Rangers Barrios and Pistel issued citations to the three individuals for 43 C.F.R. 8365.1-4(b)(1) (Cultivation of a controlled substance) with instructions that they would be notified when and where to appear later.  Barrios and Pistel then hiked down the trail that led to the marijuana garden. The garden consisted of several sites connected by a well worn trail.  There were approximately one hundred thirty (130) marijuana plants.

On July 14, 2005, Pistel checked to see if Chounlabout had been issued a beargrass permit. She checked for the years of 2003, 2004, and 2005 and found no beargrass permit issued to Chounlabout.  The firearm in the backpack turned out to be legally owned and registered to Saephon.

//

//

SENTENCING MEMORANDUM
CR 07-0421 MAG                    3

## III.  DISCUSSION OF GUIDELINES CALCULATIONS

The United States calculates the U.S. Sentencing Guidelines applicable to defendants as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2X5.2(a) |
| | – 2 | U.S.S.G. § 3E1.1(a)(acceptance of responsibility) |
| **Total** | **4** | |

### A.     U.S.S.G. § 2X5.2(a) (Base Offense Level)

The defendants pled guilty to a violation of 43 C.F.R. § 8365.2-3(f), a Class A Misdemeanor, and therefore the Sentencing Guidelines apply.  United States Sentencing Guidelines Section 2X5.2(a) applies to misdemeanor convictions not covered by another specific offense guideline and sets the base offense level at 6.

### B.     U.S.S.G. § 3E1.1 (Acceptance of Responsibility)

The United States respectfully recommends that the defendants be entitled to a two-point reduction in offense level under U.S.S.G. § 3E1.1(a) because they have "clearly demonstrate[d] acceptance of responsibility for his offense" under the terms of § 3E1.1(a) by truthfully admitting to the facts establishing his guilt.

### C.     U.S.S.G. § 2L1.2(b)(1)(A) (Criminal History Category)

The defendants have no known criminal history and therefore their Criminal History Category is I.  Based on an Offense Level of 4, this yields a Guidelines Range of 0-6 months for all three defendants.

## IV.  ARGUMENT

### A.     Sentencing Factors to Consider Under 18 U.S.C. § 3553(a).

In light of the *Booker* Court's severance of 18 U.S.C. § 3553(b)(1) from the federal sentencing statute, sentencing courts are obliged to consider the factors set forth in § 3553(a), including the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and avoid sentencing disparities among similarly situated defendants.  The United States submits that a

Guidelines range sentence under an Offense Level of 4 is both reasonable and appropriate in this case. Under 18 U.S.C. § 3553(a), the sentencing court must consider the following factors in addition to the sentence specified by the Guidelines:

1.    "the nature and circumstances of the offense and the history and characteristics of the defendant";

2.    "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public . . ."; and to provide rehabilitation;

3.    "the kinds of sentences available";

4.    "the need to provide restitution to any victims of the offense."

B.    The Kinds of Sentences Available.

For Class A Misdemeanors, the maximum term of custody is one year. 18 U.S.C. § 3559(a)(6). The maximum term of supervised release following any custodial sentence is one year. 18 U.S.C. § 3583(b)(3). In lieu of a custodial sentence, the Court may also sentence the defendants to a period of probation. The period of probation for a misdemeanor conviction may not exceed 5 years. 18 U.S.C. § 3561(c)(2). However, where the total Offense Level is less than 6, the Court may impose up to three years of probation. U.S.S.G. § 5B1.2(a)(2). The Court may also impose a fine, which may not exceed $100,000. 18 U.S.C. § 3571(b)(3). Based on a total Offense Level of 4, the fine range is $250 to $5,000.  U.S.S.G. § 5E1.2(c)(1) and (4)(A). The special assessment is $25 per count of conviction and is mandatory. 18 U.S.C. § 3013(a); U.S.S.G. § 5E1.3. Restitution is also a 3553(a) to be considered by the Court.

C.    The Court Should Require the Defendants Pay Restitution for Resource Damage.

Among the 3553(a) factors, the most significant is the resource damage to land belonging to the Bureau of Land Management. According to Ranger Barrios, the resource damage to the BLM Red Mountain land (the costs required to remove the marijuana and resod the topsoil to prevent decay and erosion) was approximately $1250.

SENTENCING MEMORANDUM
CR 07-0421 MAG                    5

Title 18 of the United States Code, Section 3663(A) (also known as the Mandatory Victims Restitution Act ["MVRA"]) provides that the "court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1).  Under the more recently enacted Crime Victim's Rights Act ["CVRA"], Section 377 (a)(6) provides for a victim's "right to full and timely restitution as provided in law".  18 U.S.C. § 3771(a)(6).  A governmental entity can constitute a "victim" within meaning of the MVRA.  *United States v Ruffen*, 780 F.2d 1493 (9th Cir. 1986), *cert den* 479 US 963 (1986); *see also United States v. Mills*, 991 F.2d 609 (9th Cir. 1993); *United States v. Guzman*, 225 Fed. Appx. 496 (9th Cir. 2007).

Although the defendants entered a guilty plea to Entering or Using a Closed Site, it is clear that their conduct contributed to resource damage and that the defendants should be held responsible for the full $1250 restitution to the Bureau of Land Management.  Morever, the defendants should be placed on probation until the full sum of restitution is received.

## V.  CONCLUSION

For the reasons set forth above, the government recommends that this Court sentence the defendants to $1250 in restitution, court probation until restitution is fully paid, and the $25 special assessment fee.

DATED: February 4, 2008                    Respectfully submitted,

                                           JOSEPH P. RUSSONIELLO
                                           United States Attorney


                                           _____/s/_____
                                           WENDY THOMAS
                                           Special Assistant United States Attorney

SENTENCING MEMORANDUM
CR 07-0421 MAG                    6