Frances K. Greenleaf (CSB #197937)
JANSSEN, MALLOY, NEEDHAM,
MORRISON, REINHOLTSEN & CROWLEY, LLP
730 Fifth Street
P.O. Drawer 1288
Eureka, CA 95501
Telephone: (707) 445-2071
Facsimile: (707) 445-8305
fgreenleaf@janssenlaw.com

Attorney for Defendant
Sarnon Saephan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States,<br><br>    Plaintiff,<br><br>v.<br><br>Sarnon Saephan,<br><br>    Defendant.<br>_____ / | CASE NO. CR07-0421<br><br>**SENTENCING MEMORANDUM FOR DEFENDANT SARNON SAEPHAN** |

### SENTENCING MEMORANDUM

**I.   Introduction**

On January 14, 2008, Mr. Saephan entered a guilty plea to the charge of Entering or Using a Closed Site, in violation of 43 Code of Federal Regulations §8356.2-3(f). Mr. Saephan submits this sentencing memorandum and respectfully requests that the Court allow him to have the opportunity to successfully complete a grant of Court-supervised probation.

**II.   Background of Mr. Saephan**

Mr. Saephan, now 41 years old, was born on June 6, 1966 in Laos. He is of Mien ethnic (or tribal) origin.

Laos was drawn into the Vietnam conflict due to the "secret war" in Laos, the United State's largest covert operation during the Vietnam War. The United States

SENTENCING MEMORANDUM FOR SARNON SAEPHAN      1

formed a military alliance with the Mien and they are one of several Laotian tribes whose members helped United States forces in the fight against communists in Southeast Asia. After a protracted civil war (in addition to the violence and bombing inflicted by various factions in the Vietnam War), a communist leader took power in Laos in 1975. At that time, the Mien were forced to flee from Laos to Thailand as they were targeted for revenge and were in fear for their lives. The Mien were confined to border camps in Thailand with inadequate shelter, sanitation and food.

In 1979, after obtaining refugee status, the Mien began to arrive in the United States. However, unlike many other Asian refugees, the Mien were a rural highland tribal group lacking in exposure to formal education or paid labor, leading to a difficult transition to the United States. During the last several decades the Mien have suffered much war-related trauma, as well as relocation trauma. The Mien have established significant communities in Northern California.

Mr. Saephan himself spent 5 years in a refugee camp in Thailand from 1975 until 1980 (from approximately age 9 to 14). Mr. Saephan lost his biological parents prior to moving to the United States – he is not sure exactly when they died. In 1980, at the age of 14 years old, Mr. Saephan moved to the United States with the people he calls his foster parents. They initially moved with sponsored relocation assistance to Alabama and in 1981 they moved to the Bay Area.

Mr. Saephan has resided in Eureka, California since 1995. Mr. Saephan has been with his long-time girlfriend, Muang Saechao (also of Mien origin), for 21 years – since 1987. They currently reside together in Eureka and they have two children together, ages 19 and 12. The children currently reside with Mr. Saephan and Ms. Saechao at home. Mr. Saephan is the main child care provider in the family and currently works in the home; his girlfriend works full-time out of the home at a local engineering firm and she is currently the wage earner of the family. Mr. Saephan previously worked outside the home, most recently at one of the local casinos.

///

SENTENCING MEMORANDUM FOR SARNON SAEPHAN                                     2

### III. Summary of Facts

Mr. Saephan pled guilty and admitted that, on July 13, 2005, in the Northern District of California he entered and used a portion of site that was closed to public use on land administered by the Bureau of Land Management (BLM). Mr. Saephan and his co-defendants were not initially arraigned or brought into Court on the citations until nearly two (2) years after the original offense date. It is important to note that Mr. Saephan and his co-defendants elected to resolve the case and, by doing so, gave up the opportunity to file valid search and seizure motions due to the traffic stop and questioning of the defendants.

The facts arise from a traffic stop by BLM officers in the area of Red Mountain BLM land. The officers alleged that the truck which Mr. Saephan was driving, and in which the other two defendants were riding, was traveling at a high rate of speed. The vehicle was followed by two BLM officers. The officers alleged that along Red Mountain Road the vehicle pulled into a turnout along the road. Contact was made with the occupants of the truck and one of the BLM officers stated to the driver that there was a speed limit on the road and that he needed to drive at a safe speed.

The officers continued to interrogate the defendants about what they were doing in the area. The officer stated he viewed gardening supplies in the back of the truck. The other two defendants stated that they were in the area looking for beargrass. The officer asked to search the car for beargrass collected without a permit and Mr. Saephan allegedly consented to the search. A search of the car revealed gardening supplies and the defendants were removed from the car, separated, and interrogated.

Mr. Saephan cooperated with the officers at all times and was fully forthcoming with the officers about the defendants' trespass and activities on public land. He also then cooperated and led the officers to the site of the trespass and activities on public lands.

At all times during the stop and questioning Mr. Saephan cooperated with the officers and answered the officers' questions truthfully. At all times during the

SENTENCING MEMORANDUM FOR SARNON SAEPHAN                    3

subsequent case, Mr. Saephan has accepted responsibility for his actions. Mr. Saephan has made every Court appearance in this matter.

IV. **Under the Federal Sentencing Guidelines Court Probation is An Appropriate Sentence in This Case**

    A.    Criminal History

The United States Attorney in this matter has indicated that Mr. Saephan has no criminal history and the defendant's criminal history is Category I. Also, the allegations in this case arise from July 13, 2005 and Mr. Saephan has experienced no subsequent arrests in the two and one half years subsequent to the incident.

    B.    Sentencing Guidelines Allow Probation

The United States Attorney has indicated that the following sentencing guidelines may be applicable in this misdemeanor case:

    a. Base Offense Level, U.S.S.G. §2X5.2    6
    b. Specific Offense Characteristics    0
    c. Acceptance of Responsibility U.S.S.G §3E1.1.    -2
    d. Adjusted offense level    4

The United States attorney previously offered a plea agreement in this case with 3 years probation, payment of $416.67 restitution to the Bureau of Land Management and payment of a mandatory special assessment of $25.

Federal law and the sentencing guidelines allow for probation in this matter. 18 U.S.C. §3561; U.S.S.G.

    C.    Sentencing Factors Also Are in Favor of Probation

18 U.S.C. §3553 provides the factors that the Court may consider when imposing a sentence including:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed:

        (A) to reflect the seriousness of the offense, to promote respect for

SENTENCING MEMORANDUM FOR SARNON SAEPHAN    4

the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established in the guidelines;

(5) any pertinent policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

In this case, the history and characteristics of the defendant – lack of criminal history according to the United States Attorney and Mr. Saephon's family support – indicate that probation is warranted. Further, the misdemeanor that Mr. Saephan pled guilty to – essentially trespass on Federal land – does not warrant jail time or intensive supervised probation. There is no indication that Mr. Saephan is a threat to public safety. Mr. Saephan is aware that conditions of probation will include the necessity to obey all laws and is advised as to the consequences of a probation violation. Mr. Saephan has expressed willingness to make restitution payments.

    D. <u>Court Probation Is Appropriate</u>

Mr. Saephan's lack of criminal history and lack of violent conduct, as well as his demonstrated cooperation with law enforcement and the Court in this matter, indicates that Court supervised probation is appropriate in this case. Court supervised probation will allow the Court to ensure that Mr. Saephan pays all restitution and fees in this case; as well as providing the Court power to monitor all conditions of probation, including the necessity to obey all laws. The United States Attorney has indicated that the main

concern in the matter is payment of the restitution and probation for a period of time. The United States Attorney has indicated that no period of jail time is warranted in this case.

There is no indication that Mr. Saephan presents a danger to public safety, nor is there any indication that Mr. Saephan is likely to commit additional criminal acts. Mr. Saephan accepts responsibility for his error in committing this misdemeanor and, since the beginning of this matter, has been willing to resolve the case with a guilty plea. Mr. Saephan cooperated with counsel at all steps in the assessment of this matter and has expressed his regret and willingness to move forward in his life without any additional legal problems.

For all these reasons, probation supervised release is not necessary or indicated in this case; Court supervised release, with appropriate conditions and payment of restitution, is a sufficient sentence for Mr. Saephan in order to protect public safety and to recover the restitution owed.

### V. Conclusion

Mr. Saephan respectfully requests that the Court order Court supervised probation in this matter, for a term the Court deems appropriate, along with all appropriate conditions of probation and a restitution order.

Dated: February 4, 2008

JANSSEN, MALLOY, NEEDHAM,
MORRISON, REINHOLTSEN & CROWLEY, LLP

By _____
FRANCES K. GREENLEAF
Attorneys for Defendant
Sarnon Saephan

SENTENCING MEMORANDUM FOR SARNON SAEPHAN                                                    6